IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC.,           )
                                   )
         Plaintiff,                )
                                   )
    v.                             )   Civ. No. 11-131-SLR
                                   )
SYMANTEC CORPORATION,              )
                                   )
         Defendant.                )

---

Thomas L. Halkowski, Esquire of Fish & Richardson P.C., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Frank E. Scherkenbach, Esquire, Howard G. Pollack, Esquire and Katherine D. Prescott, Esquire of Fish & Richardson P.C.

Richard K. Herrmann, Esquire and Mary Matterer, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Robert M. Galvin, Esquire, Geoffrey M. Godfrey, Esquire and S. Dennis Wang, Esquire of Wilmer Cutler Pickering Hale and Dorr LLP; Stefani E. Shanberg, Esquire of Wilson Sonsini Goodrich & Rosati P.C.

---

**MEMORANDUM OPINION**

Dated: March 30, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

In a prior lawsuit before this court, plaintiff SRI International Inc. ("SRI") accused defendant Symantec Corporation ("Symantec") of infringing U.S. Patent Nos. 6,484,203 ("the '203 patent") and 6,711,615 ("the '615 patent"). Civ. No. 04-1199 (hereinafter, the "04-1199" case). An extended litigation ensued, involving two Federal Circuit appeals. The present suit, also alleging infringement of the '203 and '615 patents by Symantec, was filed by SRI on February 10, 2011. (D.I. 1) Symantec filed an answer on May 6, 2011. (D.I. 12) Currently before the court is Symantec's motion for partial summary judgment of claim preclusion. (D.I. 15) For the reasons that follow, the court grants the motion.

## II. BACKGROUND

By its present motion, Symantec asks the court to preclude SRI from relitigating the issues of infringement of the '203 patent by either Symantec's MSS or its ManHunt products. (D.I. 16 at 3) Symantec's motion necessitates a review of the present complaint vis a vis the history of the 04-1199 case.

### A. The Present Complaint

The complaint at bar alleges that Symantec provides Managed Security Services (or "MSS") to customers, including "network intrusion capabilities as part of those services." (D.I. 1 at ¶ 8) At paragraph 13 of the complaint, SRI alleges that

> Symantec's providing Managed Security Services for its customers was not at issue in this earlier trial. On information and belief, Symantec uses the ManHunt line of products and/or the intrusion detection technology underlying the ManHunt line of products to provide Managed Security Services. On information and belief, Symantec also uses other systems and methods, alone or in combination with aspects of the ManHunt technology, to provide infringing

Managed Security Services.

(*Id.* at ¶ 13) SRI asserts that Symantec's provision of MSS to customers constitutes willful infringement of the '203 and '615 patents. (*Id.* at ¶¶ 18, 23)

## B. The 04-1199 Case

The court begins by reviewing the discovery record in the 04-1199 case. A 30(b)(6) deposition notice served on January 18, 2006 included a topic on "services provided by Symantec relating to the accused products, including, for example, [MSS] and Professional Security Services." (D.I. 17, ex. E at ¶ 32)[1] SRI's 30(b)(6) notices to third parties, such as that served on Marsh Inc. ("Marsh"), also specifically included MSS as a topic. (*Id.*, ex. F at topics 1, 2 & 6)[2] SRI served requests for production as well as interrogatories specifically directed to MSS on Symantec on March 1, 2006. SRI's request for production no. 98 requested

> [a]ll documents from January 1, 2004 to the present related to any service provided by Symantec, including without limitation, Symantec Professional

---

[1] Where filings from the 04-1199 case have been docketed in this suit, the court cites them as exhibits filed in connection with the pending motion. Otherwise, the court cites "Civ. No. 04-1199, D.I. ___" when referencing the 04-1199 case docket.

[2] These topics read as follows:

1. The quantity you obtained and price you paid for any of the accused products and/or any related Symantec products, software, systems and/or services, including, for example, Symantec's Managed Security Services, purchased and/or licensed by you since January 1, 2003.

2. Payments made since January 1, 2003, for the purchase and/or licensing of the accused products and/or related Symantec products, software, systems, and/or services, including, for example, Symantec's Managed Security Services.

6. Services provided by Symantec to you related to the accused products, including, for example, Symantec's Managed Security Services.

2

Services, Managed Security Services, Consulting Services and Early Warning Services related to any accused product.

(D.I. 17, ex. G at 5) Document request no. 99 requested all documents related to the revenue derived from Symantec's services, such as MSS. (*Id.*) Similarly, SRI's interrogatory no. 18 asked Symantec to

> [i]dentify, by customer, all services provided by Symantec Professional Services, Managed Security Services, Consulting Services, and Early Warning Services since January 1, 2004, that related to any of the accused products, the accused product(s) for which the service relates, the dates of services provided, the revenue received for the service provided, and the person most knowledgeable about each of these activities.

(*Id.*, ex. H at 4)

The fact discovery deadline in the 04-1199 case was March 31, 2006. As Symantec puts it, "discovery was coming to a close at the time the dispute over providing technical documents for additional products and services such as MSS, including source code, first arose."[3] (D.I. 25 at 15-16) On March 30, 2006, SRI filed an email request for emergency relief (per the court's procedures) stating that Symantec refused to provide requested discovery for convoyed services sold with the accused products, including MSS. (D.I. 17, ex. I) Before the ensuing teleconference with the court took place, on April 4, 2006, SRI took the 30(b)(6) deposition of Grant Geyer ("Geyer"), Symantec's Vice President of Managed Security Services, on the topic of MSS. (D.I. 17, ex. K at 8)

The court held a teleconference with the parties on April 13, 2006. During the conference, counsel for SRI represented to the court that "SRI identified those products

---

[3]The parties agree that MSS has an associated source code, and that Symantec did not provide it. (D.I. 26 at ex. EE, FF)

3

[listed in the email] by name and by functionality back in August and, in fact as to the Manager products that are listed in our email to the court, Symantec itself acknowledged that those products were in the case, yet it never provided discovery." (Civ. No. 04-1199, D.I. 225 at 5) While emphasizing that the Manager products had been "long ago accused" of infringement, possibly as early as June 2006 (*id.* at 8, 10), SRI indicated that it did not learn that the MSS services uses an infringing software product until the April 4, 2006 Geyer deposition. (*Id.* at 10)

Symantec took the position that it would not produce discovery on products that were not the subject of limitation-by-limitation infringement contentions; SRI felt it could not provide limitation-by-limitation infringement contentions absent the relevant discovery. (*Id.* at 6, 16-17) Not surprisingly, much had not been resolved by the close of fact discovery. The court indicated that it would resolve the matter if the parties could not but, given the nature of the dispute, would assess a fine to the losing party. (*Id.* at 20) The parties thereafter reached agreement regarding the scope of discovery, and did not approach the court with additional disputes.

After the teleconference, on April 17, 2006, SRI supplemented its infringement contentions to incorporate the testimony of its infringement expert, Dr. George Kesidis ("Kesidis"), that Symantec contributed to and induced infringement of the method claims of the '212, '203 and '615 patents "by deploying Symantec network sensors and manager products throughout [third party] enterprise networks." (D.I. 17, ex. N at ¶¶ 60, 118, 208)[4]

---

[4]This citation, provided by Symantec, is to Kesidis's expert report. SRI does not dispute Symantec's representation regarding SRI's amending its infringement

4

Symantec supplemented its response to SRI's interrogatory no. 18 with financial data on MSS on April 25, 2006. (D.I. 17, ex. J) The court held a discovery conference with the parties on May 17, 2006. (D.I. 242) SRI did not raise any issues relating to MSS at that time. (*Id.*)

The 04-1199 case proceeded through claim construction and summary judgment. On October 17, 2006, the court issued its claim construction and summary judgment rulings. The court held each of the asserted patents invalid as anticipated. (D.I. 471[5]) On appeal, the Federal Circuit affirmed the court's decision with respect to the '212 patent and vacated and remanded the court's determination that the remaining patents were rendered invalid by anticipation. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186 (Fed. Cir. 2008). The court thereafter denied defendants' renewed motion for summary judgment of invalidity on August 21, 2008. (D.I. 525)

The parties filed their joint pretrial order on August 18, 2008. In its statement of intended proofs, SRI provided as follows.

> SRI intends to prove that Symantec infringes either literally or under the doctrine of equivalents one or more of claims 1, 2, 4, 6, 12, 13, 15, 17 of the '203 patent, claims 1, 2, 4, 13, 14, 16 of the '615 patent by making, using, selling, offering to sell and having made, used, sold or offered for sale in the United States and abroad: (1) intrusion detection, prevention, and security management products under the Symantec Gateway Security, Symantec Network Security, ManHunt, Incident Manager, Information Manager, and iForce names; and (2) **managed security services, early warning services, and security consulting services**.

(D.I. 17, ex. P) (emphasis added)

A jury trial on these matters commenced September 2, 2008. MSS was

---

contentions in its reply papers.

[5]*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 456 F. Supp. 2d 623 (D. Del. 2006).

discussed briefly in the 04-1199 trial through trial testimony of Robert Allen ("Allen"), the Vice President of Global Network and Security Operations at Marsh.[6] Allen testified that Marsh purchased MSS from Symantec. For purposes of confirming this fact, SRI introduced a "Managed Security Services Agreement" (PTX-154), whereupon Allen confirmed that Marsh deployed the Symantec SNS 7100 series product on its network. (D.I. 17, ex. R at 7-8) Allen confirmed that Marsh provides a local resource for Symantec to plug in the product it is deploying, and that Symantec personnel configure the products. (*Id.* at 9-10) SRI then introduced a document entitled "Symantec MSS Implementation Method of Procedure." (PTX-156) Allen reviewed the exhibit, and testified that the primary service that Marsh looks for is "analysis and correlation," or taking network security data and correlating them against known threats. (D.I. 17, ex. R at 11-13) Allen stated that MSS performs this function, and that this was one of the reasons Marsh decided to purchase MSS from Symantec. (*Id.* at 13-14)

The jury in the 04-1199 case was not asked to specifically evaluate whether MSS infringes the '203 or '615 patents. The jury determined instead that Symantec's "ManHunt Products," or iForce IDS, ManHunt 3.0, Symantec Network Security 4.0 and the Symantec Network Security 7100 Series appliances, infringe claims 1, 13, 14 and 16 of the '615 patent and claims 1 and 12 of the '203 patent ("the asserted claims). (Civ. No. 04-1199, D.I. 558) The jury also found that Symantec's "SGS Products and Manager Products," or the combination of Symantec Gateway Security 5400, 5600, or 1600 Series (the "SGS Products") with Incident Manager 3.0 or the Security Information

---

[6]By deposition designation. As discussed above, Marsh received a 30(b)(6) notice specific to MSS.

6

Manager Series 9500 appliances (the "Manager Products"), infringe the asserted claims. (*Id.*) Symantec was also deemed to have induced customers' infringement of the asserted claims through the sale of the ManHunt Products and the SGS Products and Manager Products. (*Id.*) The jury determined that the '615 and '203 patents are valid.[7] (*Id.*)

Post-trial, for reasons the court will not reiterate here, the court found that the jury's verdict of infringement of the '203 and '615 patents by the asserted combination of the SGS and Manager Products was not supported by substantial evidence. (Civ. No. 04-1199, D.I. 609)[8] Symantec did not challenge the jury's finding that its ManHunt Products infringed the '203 and '615 patents, and the court affirmed the judgment for SRI in that regard. (*Id.*)

A final decision affirming the court's entry of judgment for SRI was published by the Federal Circuit on November 5, 2010. *SRI Intern. Inc. v. Internet Sec. Systems, Inc.*, 401 Fed. Appx. 530 (Fed. Cir. 2010). A stipulation of dismissal was entered on November 16, 2011 in lieu of a trial on damages. (*Id.* at D.I. 722) The present suit, also alleging infringement of the '203 and '615 patents by Symantec, was filed by SRI on February 10, 2011. (D.I. 1)

## III. STANDARD

A court shall grant summary judgment only if "the pleadings, depositions,

---

[7]The '203 and '615 patents have also been the subject of reexamination proceedings in the PTO; all claims have been confirmed as valid. (D.I. 1 at ¶ 7)

[8]*SRI Intern. Inc. v. Internet Sec. Systems, Inc.*, 647 F.Supp.2d 323 (D. Del. 2009).

7

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Claim Preclusion

Claim preclusion "bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010). For claim preclusion to apply, the movant must show that there has been: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010) (citation omitted). "Whether two claims for patent infringement are identical is a claim preclusion issue that is 'particular to patent law'" and, therefore, Federal Circuit law applies. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (citation omitted). In this regard, the Federal Circuit has explained that

> claim preclusion does **not** apply unless the accused device in the action before the court is "essentially the same" as the accused device in a prior action between the parties that was resolved by a judgment on the merits. . . . Accused devices are "essentially the same" where the differences between them are merely "colorable" or "unrelated to the limitations in the claim of the patent."

*Id.* at 1324 (quoting *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991)).

### B. Analysis

In this case, Symantec argues that, because there was mention of MSS during the course of the 04-1199 case and at trial, SRI should be precluded from pursuing the instant litigation. Symantec's argument suffers from two infirmities, both of which are undisputed. First, despite multiple discovery requests in the 04-1199 case, Symantec

9

did not provide SRI with any technical data on MSS. Second, there was no specific judgment entered in the 04-1199 case about MSS. And, indeed, the 04-1199 judgment proves the very distinction SRI makes in its papers, that is, the distinction between the accused **products** in the earlier case and the accused **service** at bar.

The court notes, at this juncture, that SRI does not detail how it intends to prove that the accused service (MSS) is structurally different from the products found to infringe in the 04-1199 case (ManHunt). It is unclear how infringement of a service can be proven absent the context of a product,[9] especially considering SRI's allegation that "Symantec uses the ManHunt line of products and/or the intrusion detection technology underlying the ManHunt line of products to provide [MSS]." (D.I. 1 at ¶ 13) It may be SRI's intention to prove infringement solely through MSS's associated source code.[10] Notwithstanding, it was Symantec's burden to demonstrate at this stage of the proceeding that MSS and ManHunt are "essentially the same." Acumed, 525 F.3d at 1324. Symantec has not even tried to do so in its motion papers. Symantec simply argues that, by resting its MSS claim on ManHunt technology, SRI is alleging the same patent infringement claim alleged in the 04-1199 case.[11] (D.I. 16 at 15) More is required by Acumed, and Symantec's motion must be denied.

---

[9] Moreover, if SRI is ultimately successful, it is unclear how it may recover apportioned damages based only on the service.

[10] SRI will not be permitted to retry the issue of infringement by ManHunt under the guise that it is a component of MSS.

[11] The court grants Symantec's motion for leave to file a supplemental brief in support for its motion for partial summary judgment of claim preclusion, insofar as it has considered SRI's claim chart for the '203 patent in this litigation, however, SRI's contentions do not aid Symantec in this regard. (D.I. 38)

10

## V. CONCLUSION

In sum, because the determination of whether MSS is essentially the same as ManHunt cannot be resolved on this record, Symantec's motion is denied. (D.I. 15) An appropriate order shall issue.